# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

**MYA LANDRY**                          **Case No.:**    1:23-cv-1520 (LEK/ML)

**and**

**DEVIN BARNHART**,

        Plaintiffs,

v.                                      **Jury Trial Demanded**

**THE CAR SHOPPE, INC.,**
**CHRISTOPHER MASTANTUONO,**
Individually, and
in his capacity as Chief Executive Officer,

&

**CREDIT ACCEPTANCE CORPORATION**,

        Defendants,

## COMPLAINT

Plaintiffs MYA LANDRY ("Ms. Landry and Mr. Barnhart") brings this action against Defendants THE CAR SHOPPE, INC. ("TCS") and CREDIT ACCEPTANCE CORPORATION ("CAC") and allege as follows:

## INTRODUCTION / PRELIMINARY STATEMENT

1.      This is a case about a young couple's dream of owning their first vehicle together turning into a financial nightmare. The couple, new to the complexities of auto

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

financing, fell prey to the predatory practices of a The Car Shoppe, known for its smooth-talking salespeople. At the helm was Christoppher Mastantuono, a car dealer with a reputation for pushing deals that seemed too good to be true.

2.    Lured by the promise of a hassle-free purchase, the couple found themselves entangled in an opaque web of financial manipulation masterminded by Credit Acceptance Corporation, a subprime lender with a history of exploitative loan terms. The lender specializes in targeting unsuspecting buyers with exorbitant costs and hidden fees.

3.    The deal, initially presented as an affordable monthly payment plan, has since spiraled into a budget-crushing debt trap. The vehicle, a 2015 GMC Sierra with a dubious history, was sold at a significantly inflated price, masked by the allure of affordable monthly payments and representations about the truck's condition. The loan agreement, laden with complex terms and steep penalties, was designed to maximize profit at the expense of the couple's financial stability.

4.    As the young couple struggles to keep up with the payments, their story sheds light on the darker side of the auto industry, where unethical dealers and lenders collaborate to exploit the dreams of the unwary. Their experience serves as a

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

cautionary tale about the importance of understanding the fine print and the risks of subprime auto loans.

5.      Ms. Landry and Mr. Barnhart seek redress for the Defendants' violations related to, among other things, fraudulently, negligently, or deceptively representing the vehicle's true condition to the Ms. Landry and Mr. Barnhart during the sales process and after delivery, and charges for goods and services not delivered to Ms. Landry and Mr. Barnhart as agreed, all in contravention of Federal or New York State law.

6.      Ms. Landry and Mr. Barnhart seek actual damages, statutory damages, coincidental damages, incidental damages, punitive damages, declaratory relief, costs, and attorney fees.

## JURISDICTION & VENUE

1.      This Court has subject matter jurisdiction over this action because it is brought under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1640(e). This action also presents a federal question, 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state law claims because they form part of the same case or controversy with the federal claims, 28 U.S.C. § 1367(a). The Court has authority to issue a declaratory judgment by virtue of 28 U.S.C. § 2201.

**DOMBROW LAW FIRM**
499 South Warren Street, Suite 405, Syracuse, New York 13202 – 2609
Telephone: (315) 409 – 7709 / Text: (315) 299 – 3535
www.DombrowLawFirm.com

2. This Court has personal jurisdiction over the Defendants because they transact significant amounts of business in New York with New York State residents, they have sufficient contacts with New York, and they otherwise intentionally avail themselves of New York State laws and markets by conducting its substantial business activities here.

3. This Court has personal jurisdiction over TCS because the causes of action arise from TCS's conduct of business in this state; TCS contracts to provide goods or services in this state; and because TCS has committed statutory violations, common law violations, and tortious violations within this state causing injury to Ms. Landry and Mr. Barnhart within this state, 12 U.S.C. § 5564(f), CPLR § 302.

4. This Court has personal jurisdiction over CAC because the causes of action arise from TCS's conduct of business in this state; CAC contracts to provide goods or services in this state; and because CAC has committed statutory violations, common law violations, and tortious violations within this state causing injury to Ms. Landry and Mr. Barnhart within this state, 12 U.S.C. § 5564(f), CPLR § 302.

5. Venue is proper in this district because the transaction, acts, practices, and course of conduct at issue occurred within this district and because both Defendants TCS

**DOMBROW LAW FIRM**

499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

and CFC conduct business within this district, 28 U.S.C. § 1391(b)(2); 12 U.S.C. § 5564(f).

6.    Venue is also proper in this District because Ms. Landry and Mr. Barnhart resided within New York when the transaction giving rise to this action occurred, Ms. Landry and Mr. Barnhart regularly engaged in interstate commerce within New York, and Defendants regularly transact business here.

7.    Defendant CAC has transacted business within New York State by providing thousands of New York consumers with automobile loan servicing via the mails, internet and telephone systems located in New York.

## PARTIES

8.    Ms. MYA LANDRY and Mr. DEVIN BARNHART ("Ms. Landry and Mr. Barnhart") are the Plaintiffs, individuals, consumers, and were New York State residents when the transaction giving rise to this transaction occurred.

9.    Defendant THE CAR SHOPPE, INC. ("TCS") is a Domestic Limited Liability Company registered with the New York State Department of State Division of Corporations with a DOS Identification Number of 4665746.

**DOMBROW LAW FIRM**
499 South Warren Street, Suite 405, Syracuse, New York 13202 – 2609
Telephone: (315) 409 – 7709 / Text: (315) 299 – 3535
www.DombrowLawFirm.com

10.  Defendant TCS is a Retail Motor Vehicle Dealer licensed by the New York State (*i.e.*, NYS) Department of Motor Vehicles (*i.e.*, DMV) with a facility number of 7118995, located at 1110 Route 9, Queensbury, New York 12804.

11.  At all times relevant to this Complaint, TCS is a covered person because it sold a motor vehicle to the Plaintiffs, and it originated Ms. Landry's auto finance loan to purchase that vehicle.

12.  Defendant CHRISTOPHER MASTANTUONO is the Chief Executive Officer ("CEO") of Defendant TCS.

13.  At all times relevant to this Complaint, upon information and belief, Defendant MASTANTUONO directed, guided, or instructed the conduct of TCS employees involved in the subject transaction.

14.  Defendant Credit Acceptance Corporation ("CAC") is an auto finance lender in the subprime market incorporated in Michigan and headquartered at 25505 West 12 Mile Road, Southfield, Michigan 48034. CAC has done business in New York State since 2015 or earlier.

15.  At all times relevant to this Complaint, CAC was a covered person because it purchased, acquired, and serviced Ms. Landry's auto finance loan from TCS, and because it collected debt. 12 U.S.C. § 5481(6), 15(A)(I), 15(A)(x). CAC's loan to Ms.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

Landry was "offered or provided for use by consumers primarily for personal, family, or household purposes." 12 U.S.C. § 5481(5).

## FACTUAL BACKGROUND

### *Summary*

1. Defendants' sales and service conduct, which were efforts to illegally overcharge Ms. Landry and Mr. Barnhart for the purchase of a defective automobile were oppressive, deceptive, misleading, unfair, and illegal, all done in violation of numerous and multiple provisions of the federal consumer protection laws.

2. Defendant TCS fraudulently concealed the Sierra's defects and malfunctions from Ms. Landry and Mr. Barnhart and induced Ms. Landry to enter into the financing agreement based on false and misleading representations.

3. Defendant TCS also fraudulently induced Ms. Landry to believe TCS provided warranty coverage that Defendant TCS had no intention of honoring.

4. Defendants and their agents or employees violated multiple provisions of TILA by undertaking these activities, including but not limited to all of the provisions of those laws cited herein.

5. Defendants' violations were knowing, willful, negligent and/or intentional, and Defendants did not maintain or enforce procedures reasonably adapted to avoid

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE:  (315) 409 – 7709 / TEXT:  (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

any such violations.

6.    Defendants' efforts to sell the defective vehicle and worthless extended service contract to Ms. Landry and Mr. Barnhart caused her to suffer concrete and particularized harm because the TILA provides Ms. Landry with the legally protected right to be treated fairly and truthfully with respect to money she borrows.

7.    Defendants' deceptive, misleading, and unfair representations with respect to Ms. Landry and Mr. Barnhart's purchase were material misrepresentations that affected and frustrated Ms. Landry and Mr. Barnhart's ability to intelligently respond to Defendants' conduct.

8.    Defendants' affirmative conduct, and omissions, as more fully described herein, were done in violation of 15 U.S.C. §1601 *et seq*.

9.    Defendants' TILA and other violations caused Ms. Landry and Mr. Barnhart to suffer, and continue to suffer, mental anguish, emotional distress, and out-of-pocket damages.

### *What Is The Car Shoppe?*

10.    TCS is an independent retail motor vehicle dealer that markets its products and services to the local community.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

11.     Specifically, those products and services are used motor vehicles sold in a "completely stress-free" car buying experience with "no headaches."[1]

12.     "**At the Car Shoppe, Everybody Rides!** No Credit? New Credit? Repossession? Divorce? Bankruptcy? We can find a solution for everyone. Our goal is 100% Credit Approval! We work with many financial institutions to find the right solution for every credit situation."[2]

13.     "When we say everybody rides — we mean it! At The Car Shoppe, we believe everyone deserves a nicer, newer ride. That's why we work with a huge network of lenders to ensure you get speedy approval for the car, truck or SUV you love."[3]

14.     TCS affirmatively represents its "process is straightforward and you can be confident that you're getting a great offer."[4]

15.     TCS also affirmatively represents it ". . . we will work with you to find the right vehicle . . ."[5]

---

[1] The Car Shoppe About Us webpages, available at https://www.thecarshoppeny.com/about, last visited on **November 30, 2023.**
[2] The Car Shoppe website, available at https://www.thecarshoppeny.com/, last visited on **November 30, 2023**.
[3] The Car Shoppe Why Buy from the Car Shoppe webpage, available at https://www.thecarshoppeny.com/why-buy-from-the-car-shoppe, last visited on **November 30, 2023.**
[4] The Car Shoppe website, available at https://www.thecarshoppeny.com/, last visited on **November 30, 2023**.
[5] The Car Shoppe Frequently Asked Questions webpage, available at https://www.thecarshoppeny.com/faq, last visited on **November 30, 2023**.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

16.    TCS also affirmatively represents to potential buyers concerned about needing a

co-signer that if a potential customer has ". . . income over $800 per month," they

". . . do **not** need a co-signer." (*emphasis added*) According to TCS, ". . . in some

cases, having a co-signer can reduce the down payment that's required by the bank

and the monthly payment may end up being lower."[6]

17.    TCS also affirmative represents to potential buyers that it will help buyers

establish personal credit by arranging loans with finance companies that report to

all 3 credit bureaus.[7]

### What Is Credit Acceptance Corporation?

18.    CAC is one of the country's largest publicly traded auto lenders and does business

with a network of more than 12,000 affiliated used-car dealers to offer loans to

subprime and deep - subprime consumers.

19.    CAC makes very expensive used-car loans to low-income consumers and those

with limited credit options without regard for whether they can reasonably afford

to repay the loans according to their terms.

---

[6] *Id.*

[7] [7] The Car Shoppe Frequently Asked Questions webpage, available at https://www.thecarshoppeny.com/faq, last visited on **November 30, 2023**.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE:  (315) 409 – 7709 / TEXT:  (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

20.     CAC aggressively markets itself as an alternative for consumers with limited

credit options and touts its loans as a way for consumers to build their credit and

gain financial freedom. But CAC is often setting up consumers to fail.

21.     CAC is unique among indirect auto finance lenders in that it does not vary its

interest rate based on future performance of the loan, and it offers loans to nearly

all consumers, regardless of their estimated future performance. This sounds too

good to be true, and it is.

### *Ms. Landry & Mr. Barnhart Look for a Vehicle*

22.     Ms. Landry and Mr. Barnhart were searching for a dealership online that was as

close as possible to their Saint Lawrence County home that could arrange

financing for people with credit challenges.

23.     This was to be the first time either of them independently purchased a vehicle,

which is to say, they were doing so without any assistance from family or

friends.

24.     On **December 1, 2022**, Ms. Landry and Mr. Barnhart drove approximately three

(3) hours one way from their then-home in Norfolk (Saint Lawrence County) to

Defendant The Car Shoppe's Queensbury (Warren County) location to evaluate a

vehicle they saw online and believed they wanted to purchase.

**DOMBROW LAW FIRM**

499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609

TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535

WWW.DOMBROWLAWFIRM.COM

25.    However, when Ms. Landry & Mr. Barnhart arrived at The Car Shoppe, the

vehicle they saw online was not ready for showing, so the Defendant Car Shoppe

salesperson they dealt with showed them a **2015 GMC Sierra K1500 SLE**

**(VIN:1GTV2UEC2FZ172433)** ("Sierra").

26.    Defendant TCS' salesperson represented to Ms. Landry and Mr. Barnhart that the

Sierra was in good working condition and free from defects.

27.    For example, the salesperson represented to them that the Sierra was, "his

personal favorite" and "the best truck." He also represented to them that the

Sierra "ran well" and "was clean."

28.    Ms. Landry and Mr. Barnhart agreed to purchase the Sierra after the TCS

salesperson made these representations about the Sierra's condition.

29.    Once they agreed to purchase the Sierra, a female TCS employee escorted Ms.

Landry and Mr. Barnhart to a table on which was located the deal paperwork for

the Sierra.

30.    This woman then told Ms. Landry & Mr. Barnhart that she ". . . will have Mya

sign all the paperwork she needs to sign, then have Devin sign all the paperwork

he needs to sign."

**DOMBROW LAW FIRM**

499 South Warren Street, Suite 405, Syracuse, New York 13202 – 2609

Telephone: (315) 409 – 7709 / Text: (315) 299 – 3535

www.DombrowLawFirm.com

31.     However, this female Car Shoppe employee did **not** provide Ms. Landry or Mr. Barnhart a completed, printed copy of the deal documents for them to review **BEFORE** she asked Ms. Landry and Mr. Barnhart to sign the documents, including the Retail Installment Contract (RIC), which listed Defendant TCS as the Creditor-Seller. A copy of the RIC is annexed to this Complaint as Exhibit "**1**," and incorporated by reference, as if set forth fully herein.

32.     This employee did not provide Ms. Landry or Mr. Barnhart with a completed, printed copy of the other documents outlining the transaction **BEFORE** she asked Ms. Landry and Mr. Barnhart to start signing documents.

33.     Ms. Landry and Mr. Barnhart allege Defendant TCS not providing them with the RIC and other documents outlining the transaction **before** asking them to sign the documents was not accident or unintentional, but by design.

34.     Instead, this female Car Shoppe employee read from a computer monitor what she claimed the documents said to Ms. Landry and Mr. Barnhart.

35.     Neither Ms. Landry nor Mr. Barnhart asked this Car Shoppe employee for a copy of the documents to read **before** they signed the documents because they believed the employee would give them the documents before asking Ms. Landry or Mr. Barnhart to sign the documents.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

36.     However, this "reading" consisted only of the employee telling Ms. Landry

        where to initial on the RIC.

37.     This female Car Shoppe employee also did **not** show the computer monitor to

        Ms. Landry or Mr. Barnhart, which would have allowed them to review what

        document they were signing while they were signing it.

38.     As the female TCS employee was doing this, she also went through the

        paperwork stack in front of her, simply instructing Ms. Landry to "sign here,"

        "sign here," "sign here," and so on, without any explanation about what Ms.

        Landry was signing.

39.     For example, this female Car Shoppe employee never gave Ms. Landry or Mr.

        Barnhart the option to refuse to pay the Car Shoppe's optional $175.00 fee for

        processing application(s) for registration and/or certificate of title, much less

        disclosed the fee at all.

40.     Ms. Landry had no idea what she was signing not only because the female TCS

        employee wasn't telling her, but also because the signing process was so quick.

41.     Once Ms. Landry finished signing paperwork, the female TCS employee

        repeated the process, except with Mr. Barnhart.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

42.     Ms. Landry was unaware of what documents the female TCS employee was asking Mr. Barnhart to sign.

43.     Ms. Landry believed throughout the purchase and the signing process she would be the co – signer and **not** the primary signer on the loan Mr. Barnhart planned to take out to purchase the Sierra.

44.     This employee provided a copy of the RIC to Ms. Landry and Mr. Barnhart only **AFTER** Ms. Landry signed the RIC.

45.     Upon information and belief, the entire document signing process lasted approximately five (5) minutes.

46.     Defendant TCS' representations to Ms. Landry and Mr. Barnhart implied or stated that the RIC's and other documents' terms complied with all applicable laws and regulations, including the Truth in Lending Act, the Magnuson-Moss Warranty Act, the Sierra & Traffic Law Section 417, the General Business Law Section 349, the Federal Trade Commission Holder Rule, and the New York State Motor Vehicle Retail Installment Sales Act.

47.     On **December 1, 2022**, while driving the approximately 3 hours back home to Norfolk from Queensbury, Ms. Landry and Mr. Barnhart experienced at least one (1) mechanical difficulty with the Sierra.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

48.    For example, the "Check Engine" light came on; also, the truck throttle was "glitching in and out" from time to time during the trip.

49.    Ms. Landry and Mr. Barnhart immediately contacted the dealership and brought the Sierra back to the dealership the same day they took delivery of it.

50.    Upon arrival, the dealership told Ms. Landry and Mr. Barnhart what was wrong with the Sierra after only about ten (10) minutes, but the dealership had to order the part.

51.    The dealership promised to call Mr. Barnhart and Ms. Landry when the part arrived, so Ms. Landry and Mr. Barnhart drove the Sierra back home.

52.    Over the subsequent days, Mr. Barnhart contacted the dealership to ask when the part would be coming in, but the dealership's response was simply that "we'll call you when the part comes in."

53.    However, the dealership never called about the part before Ms. Landry and Mr. Barnhart relocated to Florida in **January 2023**.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

*The Sierra of Their Dreams Becomes a Nightmare*

54.    "Are you ready to hit the road in the vehicle of your dreams?,[8]" TCS asks on its

website. Ms. Landry's and Mr. Barnhart's stress – free experience with TCS became

a nightmare.

*Ms. Landry Discovers She's the Only Borrower & Paying for an "Included" Warranty*

55.    On or about **April 29, 2023**, almost five (5) months after taking delivery of the

Sierra, Ms. Landry discovered the Defendant The Car Shoppe made her the

primary signer on the loan. Mr. Barnhart was not a signatory to the loan at all.

Until then, Ms. Landry had no idea she was more than a co – signer on the RIC.

56.    Ms. Landry alleges because she could not read the deal documents before the

female TCS employee began instructing her to sign them, she believed the Sierra's

purchase price included a warranty.

57.    Defendant TCS affirmatively represents to potential buyers worried about

whether their vehicle will have a warranty that ". . . [o]ver 97% of the vehicles"

---

[8] The Car Shoppe Why Buy from the Car Shoppe webpage, available at https://www.thecarshoppeny.com/why-buy-from-the-car-shoppe, last visited on **November 30, 2023**.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

TCS sold in a previous year ". . . had at least a 2 year/24,000 mile warranty."[9] The

website does not even suggest to potential buyers they must **pay** for the warranty.

58.    She also discovered she had instead **purchased**, and was paying for as part of her

monthly loan payment, a twenty – four (24) month / 24,000-mile extended service

contract from Wynn's Extended Care for $1,924.00 as part of the overall

transaction as the RIC laid out.

### By the Way, the Sierra Had Frame Damage When TCS Sold It

59.    On **July 6, 2023**, just over seven (7) months after taking delivery of the Sierra, Ms.

Landry and Mr. Barnhart brought the Sierra to Ferman Buick GMC ("Ferman

GMC") of Tampa to diagnose why a "Check Engine" and other instrument panel

lights were on, and why the Sierra's engine would neither "crank," nor "turn

over."

60.    On **July 26, 2023**, upon information and belief, after diagnosing the reasons for

Ms. Landry and Mr. Barnhart's complaints about how the Sierra was operating, a

Ferman GMC employee reported to Ms. Landry and Mr. Barnhart that **the**

---

[9] The Car Shoppe Frequently Asked Questions webpage, available at https://www.thecarshoppeny.com/faq, last visited on **November 30, 2023**.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

**driver's rear shock mount was rusted and had broken off the frame, cutting through the chassis harness**.

61.    Upon information and belief, the Ferman GMC Service Department verbally estimated Ms. Landry and Mr. Barnhart would have to spend between **$20,000.00 and $30,000.00 to repair the Sierra**. Ferman's Service Department also advised Ms. Landry and Mr. Barnhart **not** to undertake those repairs.

62.    Upon information and belief, the frame damage was so severe it had to have existed when TCS sold the Sierra to Ms. Landry and Mr. Barnhart.

*Car Shoppe's Stress – Free Experience Becomes Stress – Full (sic)*

63.    After learning about the Sierra's structural and mechanical deficiencies, Ms. Landry and Mr. Barnhart contacted Defendant The Car Shoppe after learning about the Sierra's frame damage to ask for help.

64.    However, upon information and belief, Defendant The Car Shoppe refused to provide any help to Ms. Landry and Mr. Barnhart because they relocated to Florida.

65.    The Car Shoppe insisted Ms. Landry and Mr. Barnhart drive the Sierra, **with its frame damage**, one thousand three hundred twenty – four (1,324) miles from

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

Tampa, Florida to Queensbury, New York if they wanted Defendant The Car Shoppe to look at the Sierra and repair it.

66. The paperwork Ms. Landry and Mr. Barnhart have said nothing about limiting warranty coverage to a specific geographic region, such as New York State, or having to transport the Sierra back to New York State for warrantied repair.

67. Ms. Landry and Mr. Barnhart also contacted Wynn's Extended Care for assistance.

68. However, Wynn's refused to provide any coverage for the repair because it claimed the warranty did not cover rust.

69. On **August 22, 2023**, Ferman GMC provided Ms. Barnhart with an itemized, written estimate of the Sierra's repair costs. A copy of this estimate is annexed to this Complaint as Exhibit "**2**," and incorporated by reference, as if set forth fully herein.

70. These costs included, but are not limited to:

a.    **$5,008.00** for a new frame (parts);

b.    **$8,000.00** labor to remove the rusted frame and install a replacement frame;

c.    **$3,000.00** additional labor to remove excessive corrosion and rust;

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

71.    Ferman GMC estimated the **total repair costs were $20,254.78, including parts, labor, supplies, and taxes**.

72.    Ferman GMC also qualified the estimate by saying the estimate was **based only upon visual inspection**, did **not** include the tear down costs, and the repair estimate could increase after they began tearing down the vehicle.

73.    Ferman GMC also reiterated its verbal advice **against** repairing the Sierra.

*Defendants' Conduct Caused Ms. Landry and Mr. Barnhart Concrete Harm*

74.    The above-described conduct by Defendants, their agents, or employees in their efforts to sell this clearly defective automobile with oppressive financial terms to Ms. Landry and Mr. Barnhart were also deceptive, misleading, unfair, and illegal actions to sell the automobile, all done in violation of numerous and multiple provisions of the law.

75.    Defendants' actions, and the employees employed by them, violated multiple provisions of the TILA, including but not limited to all of the provisions of those laws cited herein.

76.    Defendants' violations were knowing, willful, negligent and/or intentional, and either did not maintain or did not enforce procedures reasonably adapted to avoid any such violations.

**DOMBROW LAW FIRM**
499 South Warren Street, Suite 405, Syracuse, New York 13202 – 2609
Telephone: (315) 409 – 7709 / Text: (315) 299 – 3535
www.DombrowLawFirm.com

77.   Defendants' conduct with respect to this transaction deprived Ms. Landry and Mr. Barnhart of their legally protected right to be treated fairly and truthfully with respect to her purchase of this automobile and related activities after the purchase.

78.   Defendants' deceptive, misleading, and unfair representations with respect to the Sierra's sale were material misrepresentations affecting and frustrating Ms. Landry's and Mr. Barnhart's ability to intelligently respond to Defendants' misconduct.

### *Ms. Landry & Mr. Barnhart Suffer Monthly Damages*

79.   Ms. Landry & Mr. Barnhart thought about voluntarily surrendering the Sierra to CAC rather than continue to make monthly payments on a vehicle they can no longer drive.

80.   However, they decided against that after speaking with CAC representatives about voluntarily surrendering the Sierra.

81.   Upon information and belief, Ms. Landry spoke with a CAC representative who told her that if Ms. Landry even voluntarily surrendered the Sierra, then  CAC would treat that voluntary surrender as a repossession for credit reporting purposes. CAC would then report Ms. Landry's loan as a repossession to at least

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

one (1) of the three (3) major credit reporting agencies (Equifax, Experian, or

TransUnion).

82.    Then, CAC would seek a deficiency judgment against her if CAC could not sell

the vehicle for a high enough price to cover the alleged amount due and owing at

an auction, which is almost always the case.

83.    Upon information and belief, CAC's auction sales often are insufficient to satisfy

the debts owed, in which case CAC turns to post-auction collections.

Nationwide, CAC's auction proceeds satisfied, on average, only 29% of the

remaining amounts owed. And in New York, auction proceeds represent less

than 28%, and sometimes as little as 1%, of the amounts still due.

84.    CAC makes up the difference through aggressive post-repossession collection

efforts. Upon information and belief, nationwide, the Company made over

138,000 referrals to debt collection attorneys.

85.    Between **2015** and **2021**, more than one in every six of CAC's loans in New York

that reached maturity **on or before May 2021** resulted in CAC seeking and

obtaining a judgment against that borrower.

86.    CAC's team of collection lawyers often secured judgments against borrowers by

default. For example, during 2017 and 2018, only 40 of the thousands of New

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

York borrowers sued by CAC were represented by counsel. Unsurprisingly, in that same time period, CAC obtained more than 7,000 default judgments in New York.

87. The human cost is enormous. Borrowers struggle to meet monthly payments that are beyond their reach, and they expend great effort to pay the late fees CAC imposes. Over and over, repossession, garnishment, and bankruptcy result. Consumers who lose their vehicles then sometimes lose their jobs and face family difficulties as well. But despite the significant human toll borne by consumers, CAC continues to profit.

88. Even for borrowers who avoid delinquency or repossession, CAC's practices cause substantial harm. By hiding the true amount financed—and thus the true cost of the credit being offered—CAC deprives consumers of the ability to make informed decisions, to compare financing options, or to avoid unconscionably high interest charges.

89. Thus, Ms. Landry was left "between a rock and a hard place," with the choice of either continuing to make payments on the Sierra loan for a vehicle neither she nor Mr. Barnhart can drive because of the frame damage, or have CAC repossess

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

the vehicle with a repossession's collateral consequences of negative credit reporting and judgment enforcement.

90.   As of this filing, not only are Ms. Landry and Mr. Barnhart paying **$769.12 monthly** to Credit Acceptance for the Sierra, which neither Ms. Landry nor Mr. Barnhart are driving, but they are also paying **$535.29 monthly** for a Kia Forte Ms. Landry purchased in 2022 and a **$569.09 monthly** payment for a replacement vehicle for the Sierra.

91.   CAC is liable to Ms. Landry and Mr. Barnhart under the FTC Holder Rule for all allegations pled and proven against TCS.

## CAUSES OF ACTION

### Count 1 – TRUTH IN LENDING ACT, 15 U.S.C. § 1601 *et seq.*

16.   Ms. Landry and Mr. Barnhart incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

17.   The disclosure statement issued in conjunction with this consumer credit transaction violated the requirements of Truth in Lending and Regulation Z in the following and other respects:

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

a.  By failing to provide the required disclosures **prior** to consummation of the transaction in violation of 15 U.S.C. § 1638(b) and Regulation Z § 1026.17(b) [formerly § 226.17(b)].

b.  By failing to make required disclosures, including the number of payments (sixty – six (66) $769.12 payments, annual percentage rate and finance charge, clearly and conspicuously in writing in violation of 15 U.S.C. § 1632(a) and Regulation Z § 1026.17(a) [formerly § 226.17(a)].

18.  By reason of the aforesaid violations of the Act and Regulation Z, Defendant is liable to Plaintiffs in the amount of twice the finance charge or $2000, whichever is less, actual damages to be established at trial, and attorney fees and costs in accordance with 15 U.S.C. § 1640.

### Count 2 – Breach of the Implied Warranty of Merchantability

19.  Ms. Landry and Mr. Barnhart incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

20.  TCS is a seller and a merchant with respect to motor vehicles such as the Sierra.

21.  On or about **December 1, 2022**, Ms. Landry executed a RIC to purchase the Sierra from TCS, while TCS registered the Sierra to Mr. Barnhart; she and Mr. Barnhart took delivery of the Sierra on **December 1, 2022**.

**DOMBROW LAW FIRM**
499 South Warren Street, Suite 405, Syracuse, New York 13202 – 2609
Telephone: (315) 409 – 7709 / Text: (315) 299 – 3535
www.DombrowLawFirm.com

22.   An implied warranty that the goods were merchantable arose by operation of law as part of the sale of the Sierra to Ms. Landry and Mr. Barnhart.

23.   TCS breached the implied warranty of merchantability because the goods were not in merchantable condition when sold or at any time thereafter and were not fit for the ordinary purposes for which such goods were used.

24.   These breaches of the implied warranty of merchantability rendered the Sierra substantially impaired by defects, unable to serve as a reliable form of daily transportation for Ms. Landry and Mr. Barnhart, unmerchantable because of inconsistent or erratic performance, as failing to perform as reasonable consumers such as Ms. Landry and Mr. Barnhart would expect, even if they drive in the Sierra.

25.   Similarly, these implied warranty of merchantability breaches rendered the Sierra **unable to pass without objection in the trade** under the contract description because a significant amount of the buying public would object to buying a motor vehicle such as the Sierra with the defects mentioned in this Complaint.

26.   TCS also knew when Ms. Landry and Mr. Barnhart were purchasing the Sierra, they must have relied on TCS's skill or judgment in selecting or furnishing a merchantable motor vehicle.

**DOMBROW LAW FIRM**
499 South Warren Street, Suite 405, Syracuse, New York 13202 – 2609
Telephone: (315) 409 – 7709 / Text: (315) 299 – 3535
www.DombrowLawFirm.com

27.     Ms. Landry and Mr. Barnhart first notified TCS of the various defects in the goods

on or about **December 1, 2022**.

28.     Because of TCS's breach of the implied warranty of merchantability, Ms. Landry

and Mr. Barnhart have suffered damages of at least $50,761.92, which represents

the difference between the value of the goods as delivered and the value they

would have had if the goods had been delivered as warranted.

29.     Upon information and belief, TCS's breach also caused Ms. Landry and Mr.

Barnhart incidental and consequential damages.

### Count 3 - Breach of the Implied Warranty of Serviceability
### (*i.e.*, Vehicle & Traffic Law Section (*i.e.*, VTL § 417) & 15 NYCRR § 78.13(b))

30.     Ms. Landry and Mr. Barnhart incorporate by reference all of the above paragraphs

of this Complaint as though fully stated herein.

31.     Ms. Landry purchased the Sierra from TCS, which assigned or sold her auto

finance loan to CAC.

32.     TCS represented to Ms. Landry and Mr. Barnhart before they took delivery that

the Sierra was safe for use on New York State roadways and reinforced that

representation by putting a New York State motor vehicle safety inspection sticker

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

on the Sierra before allowing Ms. Landry and Mr. Barnhart to take delivery of the Sierra.

33.     Defendant TCS breached the implied warranty of serviceability under New York State Vehicle & Traffic Law Section 417 by delivering the Sierra with a rusted frame, making the Sierra unsafe for use on New York State roadways.

### Count 4 – Magnuson – Moss Warranty Act (*i.e.*, Mag – Moss) Violation

34.     Ms. Landry and Mr. Barnhart incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

35.     Ms. Landry and Mr. Barnhart are consumers who purchased a product, in this case, the Sierra, a vehicle, from the Defendant TCS.

36.     Upon information and belief, the Defendant TCS provided a written warranty to Ms. Landry and Mr. Barnhart.

37.     The Sierra was not of merchantable quality, meaning it did not pass without objection in the trade, as explained in the cause of action for breach of the implied warranty of merchantability set forth above.

38.     Defendant TCS breached an express warranty in violation of Vehicle & Traffic Law § 417 by representing that the vehicle was safe for travel on New York State

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE:  (315) 409 – 7709 / TEXT:  (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

roadways even though it had a rusted frame meaning the Sierra should not or would not legally pass a New York State safety inspection.

39.     Ms. Landry and Mr. Barnhart has suffered damages as a result of the Defendant's breach of warranty.

40.     Ms. Landry and Mr. Barnhart provided notice to Defendant TCS of the breach of warranty and allowed Defendant TCS a reasonable opportunity to cure the breach.

**Count 5 – General Business Law Section (*i.e.*, GBL § 349) Violation**

41.     Ms. Landry and Mr. Barnhart incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

42.     TCS and CAC conducted trade and commerce in New York and elsewhere within the meaning of GBL 349 at all relevant times material to Ms. Landry and Mr. Barnhart' claims.

43.     TCS is engaged in, among other things, the sale of motor vehicles and the repair services, and products used to make those repairs to those vehicles for the consuming public, including Ms. Landry and Mr. Barnhart.

44.     CAC is engaged in, among other things, the purchase or acquisition of auto finance loans from dealerships such as TCS, and then servicing those loans, including debt collection, for borrowers such as Ms. Landry and Mr. Barnhart.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

45.    Upon information and belief, Defendant TCS dealt with Ms. Landry and Mr. Barnhart as they would have with any customer contacting TCS to purchase or to repair a motor vehicle.

46.    Upon information and belief, Defendant CAC dealt with Ms. Landry and Mr. Barnhart as they would have with any customer paying off an auto finance loan CAC bought from a dealership.

47.    Upon information and belief, Defendant TCS sold the Sierra and repair services and related products for the Sierra to Ms. Landry and Mr. Barnhart with standard documents presented to any customer upon an agreement to sell those vehicles and services to any similarly situated customer.

48.    Upon information and belief, Defendant CAC services the loan and provides related services for that loan to Ms. Landry and Mr. Barnhart with standard documents presented to any customer upon an assignment of that customer's loan from a selling dealer.

49.    Upon information and belief, the sale of motor vehicles and repair services and products to make those repairs for motor vehicles is not unique to TCS and Ms. Landry and Mr. Barnhart, was not private in nature, or a "single shot transaction."

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

50.    Defendant TCS's conduct had or potentially had an impact on consumers at large by misrepresenting the quality of motor vehicles sold to the consumer public to get them to purchase those vehicles; Defendant CAC's conduct had an impact on consumers at large by misrepresenting, as part of a continuing pattern and practice it engages in not only with Ms. Landry, but also other New York State consumers, they had an obligation to continue to make payments on loans for unroadworthy vehicles when CAC could have canceled the loans or taken other steps to alleviate the consumers' financial difficulties.

51.    Upon information and belief, the servicing of auto finance loans is not unique to CAC and Ms. Landry and Mr. Barnhart, was not private in nature, or a "single shot transaction."

52.    TCS failed to provide Ms. Landry and Mr. Barnhart with a copy of the Retail Installment Contract ("RIC") and the Vehicle Service Contract / Application (VSC/A) **before** having them execute those documents.

53.    TCS violated 15 NYCRR §78.13(a)(1) because it failed to provide Ms. Landry and Mr. Barnhart with the DMV Form MV – 50 (*i.e.*, Retail Certificate of Sale) when they took delivery of the Sierra.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE:  (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

54.     TCS also failed to provide Ms. Landry and Mr. Barnhart with DMV Form MV –

103 (*i.e.*, Odometer & Damage Disclosure Statement) to her when she took delivery

of the Sierra.

55.     Defendant TCS failed to disclose to Ms. Landry and Mr. Barnhart the Sierra before

selling the Sierra to them that it had an estimated $20,000.00 in frame damage that

rendered the Sierra practically worthless, except possibly as scrap metal.

56.     Defendant TCS committed 1 or more of the following unfair or deceptive acts or

practices, which remain uncured, including, but not limited to:

a.      breach of express or implied warranties;

b.      Magnuson – Moss Warranty Act violations;

c.      representing the subject of a consumer transaction has performance,

characteristics, accessories, uses, or benefits, the subject does not have and

which the supplier knows or should reasonably know the subject does not

have;

d.      delivering the Sierra to Ms. Landry and Mr. Barnhart in a condition that

would not pass without objection in the trade or was not fit for ordinary

purposes of use;

e.      delaying or stalling in the performance of a legal obligation;

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

      f.      representing defects would be repaired without following through to do so.

### Count 6 – Negligence

57.    Ms. Landry and Mr. Barnhart incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

58.    The foregoing acts and omissions of Defendant TCS and its agents constitute negligence with respect to Ms. Landry and Mr. Barnhart.

59.    Ms. Landry and Mr. Barnhart is entitled to actual damages and reasonable attorney's fees and costs pursuant to New York Law, from Defendants herein because of Defendant TCS's negligence.

### Count 7 – Breach of Contract

60.    Ms. Landry and Mr. Barnhart incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

61.    Ms. Landry and Mr. Barnhart had a contract consisting of Defendant TCS's offer to sell them the Sierra and Extended Service Contract, Ms. Landry and Mr. Barnhart' acceptance of that offer, and consideration exchanged between the parties.

62.    Defendant TCS's foregoing acts and omissions, and those of its agents, constitute

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE:  (315) 409 – 7709 / TEXT:  (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

breach of contract with respect to Ms. Landry and Mr. Barnhart.

63.    Defendant TCS's breach of contract entitles Ms. Landry and Mr. Barnhart to actual damages and reasonable attorney's fees and costs pursuant to New York Law, from Defendants herein.

## Count 8 – Unjust Enrichment

64.    Ms. Landry and Mr. Barnhart incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

65.    Defendant CAC has been unjustly enriched by retaining Ms. Landry and Mr. Barnhart's monthly payments.

66.    Defendant CAC was not entitled to that benefit.

67.    It would be unjust to allow Defendant CAC to retain that benefit.

68.    Ms. Landry and Mr. Barnhart are entitled to judgment against Defendant CAC in an amount to be proven at an arbitration hearing for this unjust enrichment.

## Count 9 – Respondeat Superior

69.    Ms. Landry and Mr. Barnhart incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

70.    Defendant TCS's acts and omissions, and those Defendant employed, who were Defendants TCS's employees and agents, and who represented Defendants as

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

further described herein, were committed within the time and space limits of their agency relationship with their principal, the Defendant TCS.

71.   Defendant TCS's acts and omissions, and those of the others were incidental to, or of the same general nature as, the responsibilities employees or agents Defendant TCS authorized to perform services for persons like Ms. Landry and Mr. Barnhart.

72.   By committing these acts and omissions with respect to Ms. Landry and Mr. Barnhart, Defendant TCS and the others were motivated to benefit their principal, the Defendant.

73.   Defendant TCS is therefore liable to Ms. Landry and Mr. Barnhart through the Respondeat Superior Doctrine for the intentional and negligent acts, errors, and omissions done in violation of law by Defendant and its employees and agents, including but not limited to all of the violations of laws as more fully described herein, in their provision, and failure to properly provide services to Ms. Landry and Mr. Barnhart.

## Count 10 - FTC Holder Rule Liability

74.   Ms. Landry and Mr. Barnhart incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

75.    On or about **December 1, 2022**, The Car Shoppe subsequently assigned the RIC

to the Defendant Credit Acceptance Corporation.

76.    Defendant CAC became the holder of the Retail Installment Contract (RIC) for the

Sierra Ms. Landry and Mr. Barnhart purchased from Defendant TCS upon this

assignment.

77.    RIC Page 4 of 5 contains the following language, in BOLD CAPITAL LETTERS:

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER**.

78.    TCS engaged in deceptive acts or practices that violate the Federal Trade

Commission Act, the Truth in Lending Act, and the Magnuson-Moss Warranty

Act, with respect to the sale of the vehicle to the Plaintiffs.

79.    Defendant TCS' deceptive acts or practices , including but not limited to,

expenses related to repairs and replacements of parts, loss of use, and decreased

resale value of the vehicle caused Ms. Landry and Mr. Barnhart to suffer

damages.

**DOMBROW LAW FIRM**
499 South Warren Street, Suite 405, Syracuse, New York 13202 – 2609
Telephone: (315) 409 – 7709 / Text: (315) 299 – 3535
www.DombrowLawFirm.com

80.    Defendant CAC is liable under the FTC Holder Rule for TCS's conduct in the sale

of the Sierra to the Plaintiffs, as CAC is a holder of the retail installment sales

contract.

**Count 11 - New York State Motor Vehicle Retail Installment Act Assignee Liability**
**(Personal Property Law § 302)**

81.    Ms. Landry and Mr. Barnhart incorporate by reference all of the above paragraphs

of this Complaint as though fully stated herein.

82.    On or about **December 1, 2022**, The Car Shoppe subsequently assigned the RIC

to the Defendant Credit Acceptance Corporation.

83.    Defendant CAC became the holder of the Retail Installment Contract (RIC) for the

Sierra Ms. Landry and Mr. Barnhart purchased from Defendant TCS upon this

assignment.

84.    Defendant TCS' deceptive acts or practices , including but not limited to,

expenses related to repairs and replacements of parts, loss of use, and decreased

resale value of the vehicle caused Ms. Landry and Mr. Barnhart to suffer

damages.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

85.    Defendant CAC is liable under Personal Property Law § 302 for TCS's conduct in the sale of the Sierra to the Plaintiffs, as CAC is a holder of the retail installment sales contract, exclusive of attorney fees and costs the court may award.

## DECLARATORY RELIEF

86.    Ms. Landry and Mr. Barnhart incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

87.    An actual controversy has arisen and now exists between Ms. Landry, Mr. Barnhart and the Defendants concerning their respective rights and duties in that Ms. Landry and Mr. Barnhart contend that Defendants breached their contract with Ms. Landry and Mr. Barnhart and violated state and federal law, and whereas Defendants apparently dispute this contention and by their conduct contend that they have no duties to Ms. Landry or Mr. Barnhart.

88.    Ms. Landry and Mr. Barnhart desire a judicial determination of Defendants' rights and duties, and if it so exists, the extent of Ms. Landry's and Mr. Barnhart's liability to the Defendants, if any, and vice versa.

89.    A judicial declaration is necessary and appropriate at this time under the circumstances so that Ms. Landry and Mr. Barnhart may their rights and duties because their personal business affairs are seriously impaired, and Ms. Landry and

**DOMBROW LAW FIRM**
499 South Warren Street, Suite 405, Syracuse, New York 13202 – 2609
Telephone: (315) 409 – 7709 / Text: (315) 299 – 3535
www.DombrowLawFirm.com

Mr. Barnhart are otherwise suffering a financial burden by this unsettled state of affairs.

90.   Ms. Landry and Mr. Barnhart have already suffered from damage by having to thousands of dollars into repairing the Sierra, which would be against the diagnosing repair facility's advice, making monthly payments on the loan Defendant CAC services for a vehicle they cannot drive.

91.   Declaratory relief is therefore appropriate in order to bring peace to the parties and prevent Defendants from causing further unwarranted and unjust damage to Ms. Landry and Mr. Barnhart.

## PRAYER FOR RELIEF

**WHEREFORE**, Ms. Landry and Mr. Barnhart request that this Court enter judgment in her favor and against Defendants and award the following:

a)    Adjudging and decreeing that Defendants have engaged in the conduct alleged above, entering Judgment in favor of Ms. Landry and Mr. Barnhart;

b)    All actual compensatory damages suffered;

c)    Actual, statutory, and punitive damages allowable under 15 U.S.C. §1640(a), and subsequent regulations, as set forth in TILA;

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

d)      Actual damages; Statutory damages in the amount of double the finance charge, pursuant to 15 U.S.C. § 1640(a)(2), with a minimum award of $500 and a maximum award of $5,000, or such higher amount as may be appropriate in light of the Defendants' pattern or practice of noncompliance;

e)      for an award of actual damages in an amount based upon the value funds taken from Ms. Landry and Mr. Barnhart, plus interest from the time of Defendants' conversion;

f)      for actual and compensatory damages for Negligence in a reasonable amount to be determined by the Court, against Defendant;

g)      for actual and compensatory damages, expectancy damages, costs of litigation and attorney's fees for Breach of Contract in a reasonable amount to be determined by the Court, against Defendant;

h)      for actual and compensatory damages, expectancy damages, costs of litigation and attorney's fees for Breach of Good Faith and Fair Dealing in a reasonable amount to be determined by the Court, against Defendant;

i)      for attorney's fees and costs of suit as provided by state and federal law;

j)      for both pre- and post-judgment interest at the maximum allowable rate on

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

any amounts awarded;

k)      for all other recoveries and fees otherwise permitted by these claims and by

        law; and

l)      for an award of punitive damages from Defendants pursuant to applicable

        state or federal law, in an amount to be determined at trial;

m)      for a judgment and decree and decree that Defendant TCS has engaged in

        the conduct alleged above, entering Judgment in favor of Ms. Landry and

        Mr. Barnhart;

n)      for all actual compensatory damages suffered; and

o)      and for such other and further relief as may be just and proper.

Dated:      Syracuse, New York
            December 1, 2023

                                        /s/ *Russell W. Dombrow*
                                        Russell W. Dombrow, Esquire
                                        NDNY Bar Number 516948
                                        Attorney for Plaintiffs
                                        **DOMBROW LAW FIRM**
                                        499 South Warren Street, Suite 405
                                        Syracuse, New York 13202 – 2609
                                        Telephone:    (315) 409 – 7709
                                        Facsimile:     (315) 409 – 7705*
                                        *- Fax Service Not Accepted*
                                        Email:  Russell@DombrowLawFirm.com

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE:  (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

### NOTICE TO PRESERVE ALL DOCUMENTS, RECORDINGS, AND TANGIBLE THINGS, AND ALL ELECTRONICALLY STORED INFORMATION ("Notice")

To the Defendant(s) Above:

**As you know, this law firm has been retained to represent the Plaintiffs in the above captioned matter ("Lawsuit").**  As used in this notice, the terms "you" and "your" refer to the Defendant(s) above-named and their predecessors, successors, parents, subsidiaries, divisions and affiliates and its respective officers, directors, agents, attorneys, accounts, employees, partners, contractors, and other persons occupying similar positions or performing any functions on behalf of Defendant.

**My client respectfully demands that you preserve all recordings, documents, tangible things, and electronically stored information that are in anyway relevant to the Lawsuit.** A civil suit has been commenced against you by my client in the  Court herein, related to the matters described herein.

**You have a legal duty to preserve evidence in this matter.**  This duty to preserve evidence exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. The New York State Court of Appeals has specifically addressed this issue:

> Under the common-law doctrine of spoliation, when a party negligently loses or intentionally destroys key evidence, the responsible party may be sanctioned under CPLR 3126. *Sanders v. 210 N. 12th St., LLC*, 171 A.D.3d 966, 968 (N.Y. App. Div. 2019). Further, we have recognized that, regardless of whether a party acted in good or bad faith, "the affirmative destruction of evidence has not been condoned." *See Alphas v. Smith*, 170 A.D.3d 529 (N.Y. App. Div. 2019). The duty to preserve evidence exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. *Haviv v. Bellovin*, 39 A.D.3d 708 (N.Y. App. Div. 2007). The integrity of our judicial system depends on the ability of litigants to locate and identify relevant proof without fear that the truth-seeking process will be thwarted by spoliation

**DOMBROW LAW FIRM**

499 South Warren Street, Suite 405, Syracuse, New York 13202 – 2609
Telephone:  (315) 409 – 7709 / Text:  (315) 299 – 3535
www.DombrowLawFirm.com

of evidence. Destruction of evidence by parties with a duty of preservation simply cannot be condoned, especially when that duty is imposed by court order. *Ortega v. New York*, 9 N.Y.3d 69, 79 (N.Y. 2007)

**Much of the information that is subject to disclosure or responsive to discovery in this case may be stored on your current and former computer systems and other media and devices, including personal digital assistants, voice messaging systems, online repositories, telephone recording systems, hard drives, and cell phones**.  The term Electronically Stored Information (hereinafter "ESI") should be afforded the broadest possible meaning and includes (by way of example and not as an exclusive list) potentially relevant information electronically, digitally, magnetically, optically, or otherwise stored as:

- Audio and/or video records of any telephone calls and conversations made related to the events described in the Lawsuit;
- digital communications (for example email, voicemail, imaging, scanning, and/or instant messaging);
- email service stores and server information (for example SQL Server, Oracle, Dropbox, Box, lotus, domino.nsf, Microsoft exchange.edb, Google Corporate Gmail, etc.);
- word processing documents (for example Microsoft Word or WordPerfect files and all drafts thereof);
- spreadsheets and tables;
- accounting application data;
- imaging and facsimile files;
- recordings of any conversations with my client;
- phone records of any calls to my client;
- databases (for example Access, Oracle, SQL Server data);
- Contact and relationship data management (for example Outlook, Ask or Interaction);
- Calendar and diary application data;
- online access data (for example temporary internet files, history files and cookies);
- presentations (for example PowerPoint and Corel presentations);

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

- network access and server activity logs relating to information exchanged between you and third parties, and by you with third parties;
- project management application data;
- backup and archival files;
- letters, documents, or correspondence of whatever kind related to existing loss prevention policies, and changes, updates, alterations made to loss prevention policies for the past three (3) years;

**My client hereby demands that you preserve both accessible and inaccessible ESI**.  This demand is reasonable and necessary.  Pursuant to the Rules of Civil Procedure, in the event of an eventual civil suit you must identify all sources of ESI you decline to produce and demonstrate why such sources are not reasonably accessible.  For good cause shown in that event, the Court may order production of ESI even if it is not reasonably accessible.  Accordingly, you must preserve ESI that you deem inaccessible so as not to preempt the Court's authority.

**Preservation requires your immediate intervention.**  You must act immediately to preserve potentially relevant ESI, including, without limitation, information and the earlier of a created or last modified date for ESI concerning any activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand.  Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence.  You must immediately intervene to prevent loss due to routine operations or malfeasance and employ proper techniques and protocols to preserve ESI.  Booting a drive, examining its contents, or running any application may irretrievably alter the evidence contained therein and constitute spoliation of evidence.

**You are also directed to immediately initiate a litigation hold for potentially relevant ESI, documents, and tangible things, and to act diligently and in good faith to secure and audit compliance with that litigation hold.**  You are further directed to immediately identify and modify or suspend features of your information systems and devices, which, in routine operation, operate to cause the loss of potentially relevant ESI.  Examples of such features and operations that could result in spoliation include:

**DOMBROW LAW FIRM**
499 South Warren Street, Suite 405, Syracuse, New York 13202 – 2609
Telephone:  (315) 409 – 7709 / Text:  (315) 299 – 3535
www.DombrowLawFirm.com

- purging the contents of email repositories by age, capacity, or any other criteria
- using data or media wiping, disposal, erasure of encryption utilities or devices
- overriding erasing, destroying, or discarding backup media
- reassigning, re-imaging or deposing of systems, servers, devices, or media;
- running antivirus or other programs affecting wholesale metadata alteration
- releasing or purging online storage repositories
- using metadata stripper utilities
- disabling server, packet, or local instant messaging login
- executing drive or file defragmentation or compression programs
- shredding or other destruction of documents, routine or otherwise

**You should anticipate that your officers, employees, or others may seek to hide, destroy, or alter ESI.** This is not a concern that is unique to you or your organization. Rather it is simply conduct that occurs with such regularity that any custodian of ESI and their counsel must anticipate and guard against its occurrence. You are directed to preserve complete backup tape sets (including differentials and incrementals) containing recordings, emails and ESI for any person involved in the activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand, whether inside or outside of your organization and control. You should also take affirmative steps to prevent anyone with access to your data, systems, or archives from seeking to modify destroy or hide ESI.

**As an appropriate and cost-effective means of preservation, you should remove from service and securely sequester the systems, media, and devices housing potentially relevant ESI.** In the event that you deem it impractical to sequester those systems, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems identified above is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods. Failure to use such methods imposes a significant threat of

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

spoliation and data loss. Be advised that a conventional copy, backup or ghosting of a hard drive does not produce a forensically sound image because it only captures active, unlocked data files and fails to preserve forensically significant data.

**You should anticipate that certain ESI, including but not limited to recordings, spreadsheets and databases will be sought in the forms or form in which it was ordinarily maintained, that is in native form.** Accordingly, you should preserve ESI in such native forms and should not employ methods to preserve ESI that remove or degrade the ability to search ESI by electronic means or that make it difficult or burdensome to use that information.

**You should further anticipate the need to disclose and produce system and application metadata and act to preserve it.** System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Metadata may be overwritten or corrupted by careless handling or improper preservation, including by moving, copying, or examining the contents of files. As hard copies do not preserve electronic search ability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions.  If information exists in both electronic and paper forms, you should preserve both the forms.

**We desire to work with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol if you furnish an inventory and description of the systems and media to be preserved.** Alternatively, if you promptly disclose the preservation protocol you intend to employ, perhaps we can now identify any points of disagreement and resolve them.

**A successful and compliant ESI preservation effort requires expertise.** If you do not currently have such expertise, we urge you to engage the services of an expert in electronic evidence and computer forensics. Perhaps our respective experts can work cooperatively to secure a balance between evidence preservation and burden that is fair to both sides and acceptable to the Court. I am available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay. Should your failure

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE:  (315) 409 – 7709 / TEXT:  (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

to preserve potentially relevant evidence result in the corruption, loss, or delay of production of evidence to which we are entitled, that failure would constitute spoliation of evidence.

**Please confirm in writing no later than five (5) business days from the date of this Notice, that you have taken the steps outlined in this Notice to preserve ESI and tangible documents potentially relevant to this pending action.** If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.

If you retain legal counsel with respect to these matters, please direct this Notice to their immediate attention. Thank you for your anticipated cooperation in this vital matter.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM